Eric Hines #663508/146993B
South Woods State Prison
215 S. Burlington Road
Bridgeton, N.J. 08302

```
                    RECEIVED
                    OCT 30 2019
                    AT 8:30_____
                    WILLIAM T. WALSH, CLERK    M
```

United States District Court
for the District of New Jersey
Camden Vicinage

```
-   -   -   -   -   -:
Eric Hines
        Plaintiff            :

        v.                   :

Gary M. Lanigan, et. al.     :
        Defendants.          :
                             :
-   -   -   -   -   -
```

Hon. Judge Joel Schneider

Civil Action No.
1:17-cv-02864-NLH-JS

Notice of Motion for Pro
Bono Counsel Pursuant to
28 U.S.C. §1915(e)(1)

```
2019 DEC -5  P 12: 12

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
```

To: Hon. Judge Joel Schneider
    United States District Court
    P.O. Box 2797
    Camden, N.J. 08101

P L E A S E   T A K E   N O T I C E   that  Pro Se Plaintiff
Eric  Hines,  hereby  moves  before  the  Honorable  Judge  Joel
Schneider, in the United States District Court, U.S. Courthouse,
Camden,  New  Jersey,  for  an  order  to  grant  application  for  Pro
Bono Counsel 28 U.S.C. §1915(e)(1).

In  support  of  this  motion,  Plaintiff  shall  rely  upon  the
contents  contained  within  application,  dated  _10/28/2019____,
that is being filed with this motion.

Dated: _10/28/2019____

Eric Hu_____
Eric Hines, Pro Se

Eric Hines #663508/146993B
South Woods State Prison
215 S. Burlington Road
Bridgeton, N.J. 08302

United States District Court
for the District of New Jersey
Camden Vicinage

- -   -   -   -   -:
Eric Hines                        Hon. Judge Joel Schneider
     Plaintiff            :
                 Civil Action No.
                 1:17-cv-02864-NLH-JS
   v.                 :
                 Motion for Pro Bono
Gary M. Lanigan, et. al.   :      Counsel Pursuant to
     Defendants.           28 U.S.C. §1915(e)(1)
              :
- -   -   -   -   -

      I, Plaintiff Eric Hines, being of full age, duly sworn according to law, upon my oath, depose and state that:

      1). I am the Pro Se Plaintiff in the above caption matter now before this Court. I am currently confined at South Woods State Prison, herein S.W.S.P.

      2). The Plaintiff (herein Mr. Hines) alleges that, as a result of the defendants' (joint and individual) acts violated Mr. Hines' rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution, Title II of the Americans with Disability Act (ADA), 42 U.S.C. §12101 et. seq., as made applicable to the individual States by the Fourteenth Amendment of the United States Constitution, and supplemental State Law claims pursuant to the New Jersey Civil Rights Act (NJCRA); and pursuant to 42 U.S.C. §1983, §1984, and §1986.

Page -1- of 7

The sheer number of claims and defendants makes this case factually complex.

3). In addition to that, one of Mr. Hines' claims involves the denial of medical care, i.e. and proper medical supplies. It will be necessary to call on medical expert witnesses to validate Mr. Hines medical condition, and refute the defendants' claims.

4). The presence of complex medical issues, requiring expert testimony, supports the appointment of counsel. Montgomery v. Pinchak, 294 F.3d 492, 503-04 (3d Cir. 2002); Moore v Mabus, 976 F.2d 268, 272 (5th Cir. 1992); Jackson v. County of Mclean, 953 F.2d 1070, 1073 (7th Cir. 1992).

5). Mr. Hines was able to retain an attorney, Charles H. Landesman, esq. Mr. Hines had informed Mr. Landesman that, the amended complaint (ECF No. 7) and the later motion to amend complaint (ECF No. 10) was granted leave to amend on 1/18/19, pursuant to Federal Rule of Civil Procedure 15, authorized before a responsive pleading has been filed. See Fed. R. Civ. P. 15(a)(1). The Court will thus grant Plaintiff leave to file one, all-inclusive, amended complaint that conforms to the Federal Rules of Civil Procedure.

6). Mr. Hines, personally, informed Mr. Landesman that, without proper medical supplies, he was being forced to sit and lie in urine and feces. Mr. Hines also informed Mr. Landesman that he was assaulted, and the dire need to submit an emergency injunction relief motion. Mr. Landesman assured Mr. Hines that

he would do so. However, after several months, Mr. Landesman had not did so, stating that, he wanted to wait and see who was representing the state and medical department. Due to Mr. Landesman negligence, Mr. Hines continues to suffer irreparable harm.

7). Mr. Hines is being forced to sit and lie in urine and feces, and was assaulted. His health, and physical well being, is in jeopardy, and has "Merit in fact and law," as required by Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993), and Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997).

8). Mr. Hines has been on administrative segregation since 2016. Mr. Hines has to seek legal advice by institutional mail. This takes a substantial amount of time. The restraints placed on Mr. Hines by virtue of his confinement, and the added restrictions being on administrative segregation only compounds the difficulties that Mr. Hines will face submitting a legible and comprehensive case before a jury.

9). To receive legal cases, legal material, or have photo-copies made, on administrative segregation, Mr. Hines must submit a request slip (G-27). This is not the most efficient method of obtaining legal cases, legal material, or having photo-copies made. This also compounds to the difficulties that Mr. Hines will face submitting a legible and comprehensive case before a jury.

10). Being on administrative segregation, the items that Mr. Hines is allowed to retain in his cell is highly restricted.

Inmates are allowed to have their word processor, but Mr. Hines is being refused the right to retain his word processor, like other prisoners on level #1 administrative segregation status. See exhibits A & B. This too compounds to the difficulties that Mr. Hines will face submitting a legible and comprehensive case before a jury.

11). This case will require a considerable amount of discovery, concerning the identity of inmate witnesses, officers, special investigation division reports, statements made about the incidents, and any prior history of PREA complaints, racial threats, threats made by special investigation division officers, retaliatory acts, misuse of force, any complaints filed on all officers or officials involved.

12). Due to Mr. Hines being a prisoner, it is virtually impossible for him to locate and interview the inmates who were housed on a unit known as 4-1-R, who were on nearby phones, walking on the tier, or in the common area. These inmate witnessed some and/or all of the PREA allegations committed by Officer Waters, such as fondling Mr. Hines' penis and derriere.

13). I have inmate witnesses who heard the threats by officers, as well as threats by the special investigative division officers, and the assaults Mr. Hines suffered at the hands of officer Marin and L. Smith. Inmates in similar situations, with regards to developing the facts as an inmate who has been transferred to a different institution, a factor

that several courts have cited in appointing counsel. <u>Tucker v. Randall</u>, 948 F.2d 288, 391-92 (7th Cir. 1991); <u>Gaston v. Coughlin</u>, 679 F. Supp. 270, 273 (W.D.N.Y. 1988). Also see <u>Parham v. Johnson</u>, 126 F.3d 454, 459 (3d Cir. 1997)(Holding counsel should have been appointed because "Prisoner's lack of legal experience and the complex discovery rules clearly put him at a disadvantage  in countering the defendant's discovery tactics, these discovery rules prevented [the Plaintiff] from presenting an effective case below.")

14).   Mr. Hines' account of the PREA complaint, the threats made by the special investigative division officers for making the PREA complaint, retaliatory acts committed by the officers, is squarely in conflict with the statements of the officers. This aspect of the case will be a credibility contest between Mr. Hines, his witnesses, and the defendants. The existence of these credibility issues supports the appointment of counsel. See <u>Steel v. Shah</u>, 87 F.3d 1266, 1271 (11th Cir. 1996); <u>Gaston v. Coughlin</u>, 679 F. Supp. at 73.

15).   Mr. Hines is an indigent prisoner, with no legal training, a factor that supports the appointment of counsel. See <u>Forbes v. Edgar</u>, 112 F.3d 262, 264 (7th Cir. 1997). In addition to that, Mr. Hines is confined to administrative segregation, with very limited access to legal material. See <u>Rayes v. Johnson</u>, 969 F.2d 700, 703-04 (8th Cir. 1992)(citing lack for ready access to a law library as a factor supporting appointment of counsel.

16).   The   large   number   of   defendants,   some   who   are supervisory,   presents   complex   legal   issues   of   determining   which defendants   were   personally   involved   in   the   constitutional violations   to   be   held   liable.   See   Hendricks   v.   Coughlin,   114 F.3d   390,   394   (2d   Cir.   1997)(Holding   complexity   of   supervisory liability   supported   appointment   of   counsel.)

17).   Mr.   Hines   has   requested   a   jury   trial,   which   requires a   much   greater   legal   skill   than   Mr.   Hines   has   or   can   develop. See   Solis   v.   County   of   Los   Angels,   514   F.3d   946,   958   (9th   Cir. 2008)(Prisoner   with   eighth   grade   education   and   no   legal   training is   "ill-suited"   to   conduct   a   jury   trial.)

18).   Mr.   Hines'   allegations,   if   proved,   would   clearly establish   a   constitutional   violation.   The   PREA   complaint,   the threats   made   by   the   special   investigation   division   officers, and   assaults,   coupled   with   the   other   issues   alleged   in   the complaint,   states   an   eighth   amendment   violation.   See   Hudson v.   McMillian,   503   U.S.   1,   112   S.   Ct.   995   (1992)

19).   Failure   to   address   PREA   complaint,   the   threats   made by   the   special   investigative   division   officers,   the   retaliatory acts   by   other   officers,   and   the   failure   to   conduct   a   meaningful investigation,   the   lack   of   a   substantial   reason   for   the   erroneous decision,   are   all   violations   of   Mr.   Hines'   clearly   established due   process   right.   See   Ponte   v.   Real,   471   U.S.   491,   497,   105 S.   Ct.   2192   (1985);   Superintendent   v.   Hill,   472   U.S.   445,   457, 105   S.   Ct.   2768   (1985;   Wolf   v.   McDonnell,   418   U.S.   539,   559, 94   S.   Ct.   2963   (1974).

20).   Mr. Hines is submitting  medical records with this motion, detailing the issues surrounding his right arm (i.e. his writing arm), which requires a second operation to correct. The severe pain that Mr. Hines experiences greatly affects his ability to write. At times, Mr. Hines' right arm locks up, and he is unable to write. This very motion is/was composed by another prisoner, who was kind enough to help Mr. Hines, for a small fee.

21).   For the foregoing reasons, Mr. Hines implores this Court to grant his Petition For Pro Bono Counsel.



I, Eric Hines, Pro Se Plaintiff, certify, pursuant to R. 1:4-4(b), that the foregoing statements made by me are true. I am fully aware that if any of the statements made by me are willfully false, I am subject to punishment.

Dated: _10/28/2019_

Respectfully Submitted

_Eric Hines_
Eric Hines
Pro Se Plaintiff

Eric Hines #663508/146993B
South Woods State Prison
215 S. Burlington Road
Bridgeton, N.J. 08302


- _ _ _ _ -:

Eric Hines                         :        Hon. Judge Joel Schneider
    Plaintiff                :
                                   :        Civil Action No.
                                   :        1:17-cv-02864-NLH-JS
    v.                           :

Gary M. Lanigan, et. al.           :        Certification of Service
    Defendants.              :
                                   :

- _ _ _ _ _


    I, Eric Hines, of full age, being duly sworn according to law, hereby depose and state:
    I am the Plaintiff in the above captioned matter.
    I hereby certify that the original an three (3) copies of Notice of Motion for Pro Bono Counsel, pursuant to 28 U.S.C. §1915(e)(1), Notice of Motion, and Certification of Service, will be file with the clerk of the United States District Court, for the District of New Jersey, Camden Vicinage, and that one copy has been sent by regular mail to each of the following addresses:

Hon. Noel L. Hillman, U.S.D.J.    Mavin L. Freeman, esq.
United States District Court      Deputy Attorney General
P.O. Box 2797                  R.J. Hughes Justice Complex
Camden, N.J. 08101          25 W. Market st.
                          P.O. Box 112
                          Trenton, N.J. 08625-0112


University Correctional Health Care Rutgers
The State University of New Jersey
C/O New Jersey Department of Corrections
Bates Building, 2nd floor
Whittlesey Road, P.O. Box 863
Trenton, N.J. 08625-0863


Dated: 10/28/2019

                              *Eric Hines*
                              Eric Hines

| Ref# SWSP18023368 | Housing:SWSP-SSC-C POD-1023 | Date Created:07/31/2018 |
|---|---|---|
| ID#: 000146993B | Name:HINES,ERIC | |
| Form:Grievance | Subject:Administration | Description:Other |
| Urgent:Yes | Time left:n/a | Status:Closed |

Original Form
*7/31/2018 6:56:22 PM : ( 000146993b ) wrote*

Please be advised that the institution has allowed an inmate on C pod to retain and use his word processor. Notwithstanding the fact that it has denied every other inmate, including myself, retention and usage of our word processors. This is a blatantly discriminatory practice. Caselaw clearly establishes that similarly-situated inmates MUST BE TREATED EQUALLY!!! This issue is clearly actionable in both state and federal court. I am requesting retention and usage of my word processor posthaste.

Communications / Case Actions
*8/10/2018 12:41:32 PM : ( Willie Bonds ) wrote*
This matter is under review.

*9/9/2018 9:36:32 AM : ( Willie Bonds ) wrote*
This matter was address when you were reassigned to a new cell with electrical outlets

*9/18/2018 6:59:59 PM : ( 000146993b ) wrote*
The matter has been resolved. Thank you.

*9/19/2018 8:12:39 AM : ( T. Stanley ) wrote*
Noted

PA-2

| Ref# SWSP19005215 | Housing:SWSP-ACSU-C POD-1028 C | Date Created:02/03/2019 |
|---|---|---|
| ID#: 000146993B | Name:HINES,ERIC | |
| Form:Grievance | Subject:Administration | Description:Other |
| Urgent:Yes | Time left:n/a | Status:Closed |

Original Form

*2/3/2019 3:36:00 PM : ( 000146993b ) wrote*

Re: discrimination against inmate in similar situation, failure to provide equal protection of the law.

citing SWSp-18023368 has already exstablished SWSP, prison officials blanten disregarded for rules & regulations standards. Another inmate housed in ad-seg on C-pod has been authorizaed to retain his word processor. But on 1\31\19 officer proprety officer Jackson, issues me a mailroom slip denying me the same privilege. once another inmate was afforded possession, admin. action to deny me the same standard is a act of discrimination and failure to provide equal protection of the law. I request my word processor, as afforded another inmate.

Communications / Case Actions

*2/4/2019 9:38:39 AM : ( Luz Torres ) wrote*

You should not compere your situation with any other inmates. All inmates are asses casa by case, in your case you are ACSU level #1 most highly restricted, per policy you are NOT allowed to have a word processor.

*3/1/2019 9:22:22 AM : ( John Powell ) wrote*

Please be advised you are currently assigned as Level 1-Adseg, It should be noted inmates assigned as Level 1-Adseg are not authorized to have a word processor. Additionally it should be noted that your next review for SARC is 4/4/19.

PA-1

| Ref# SWSP18029591 | Housing:SWSP-SSC-C POD-1023 | Date Created:09/08/2018 |
| ID#: 000146993B | Name:HINES,ERIC | |
| Form:Grievance | Subject:Custody | Description:Other |
| Urgent:Yes | Time left:6 Day(s) | Status:Pending |

Communications / Case Actions.
*9/8/2018 8:53:27 AM : ( 000146993b ) wrote*
Form has been submitted

*9/8/2018 8:53:27 AM : ( 000146993b ) wrote*
According to ppromulgated rules and regulations, and standard procedure governing, the State of New Jersey,
Department of Correction Administrative Close Segregation Unit.
State the following items are approved for retention by level one inmates housed in all administrative close segregation
unit; are listed as the following;
 Level One
1). 20 Stamps & envelope
2). 3 Stationery Pads
3). 1 Clear Case Radio
4). Typerwriter/word processor
5). One clear case fan or any fan - NJSP      only.
Rules & Regulation governing ACSU guarantees inmates there rights. At this time I'm requesting my clear case radio,
be issued according to level one standard.

*9/10/2018 9:41:12 AM : ( Luz Torres ) wrote*
This is a Custody issue, your request is being refer to Custody.

PA-3

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*July 30, 2018*
Page 1
Imaging Report

## ERIC HINES
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**07/25/2015 - Imaging Report: MRI BRAIN W/O CONTRAST**
**Provider: Sharmalie Perera, MD**
**Location of Care: NJ Department of Corrections**

```
MRI BRAIN W/O CONTRAST
***Final Report***
REFERRING   BUSHRA AMBREEN MD
PHYSICIAN: 601 HAMILTON AVE.
   TRENTON, NJ 08629

Procedure Reason: lower extremity weakness
Examination:  FMR 0551 - MRI BRAIN W/O CONTRAST
Date:    Jul 25 2015
RESULT:
Examination: MRI brain
History: Lower extremity weakness
Comparison studies: None
Technique: Routine MRI brain.
Findings:
The cerebellar tonsils are within normal position. Appearance of the
brainstem and cerebellum are normal. Ventricular size is within normal
limits. On FLAIR imaging, there 2 focal areas of signal abnormality along
the peripheral white matter within dorsal left frontal lobe. There is an
additional focus of abnormal signal within the mid left frontal lobe
white matter and along the peripheral aspect of the anterior right
parietal gray-white junction. These are nonspecific and are likely
incidental findings. Diffusion imaging is normal. There is no evidence
for hemorrhage or extra-axial fluid collections. No mass lesions are
identified. Corpus callosum and pituitary gland are unremarkable.
Visualized portions of the paranasal sinuses and mastoid air cells are
clear.
Impression: Several white matter lesions which are likely incidental
findings and may represent lacunar infarcts. There is no evidence for.
Diffusion to suggest acute infarction or ischemia. No mass lesions are
identified. Etiology for the patient's lower extremity weakness is not
explained on the basis of this study.
INTERPRETING PHYSICIAN:      LYNN F TAUS MD M.D.
382281
```

**Electronically Signed by Sharmalie Perera, MD on 07/27/2015 at 11:41 AM**

M.R. 1

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*February 26, 2018*
Page 1
Imaging Report

**ERIC HINES**
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

### 07/26/2015 - Imaging Report: CT CHEST/ABDOMEN/PELVIS W/ CONTR
**Provider: Sharmalie Perera, MD**
**Location of Care: NJ Department of Corrections**

```
CT CHEST/ABDOMEN/PELVIS W/ CONTR
***Final Report***
REFERRING   JAVIER G. TABOADA MD
PHYSICIAN: 1 WALNUT LANE
  YARDLEY, Pa. 19067
```

Procedure Reason: attn retroperitoneal spacer/o malignancy
Examination:  FCT 3402 - CT CHEST/ABDOMEN/PELVIS W/ CONTR
Date:    Jul 26 2015
RESULT:
CT CT abdomen, and pelvis was performed with intravenous and oral
contrast.
History: Attention retroperitoneal space, rule out malignancy.
Comparison: Correlation is made to MRI of the thoracic spine performed
July 24, 2015.
Technique: CT of the chest, abdomen, and pelvis was performed after the
administration of intravenous and oral contrast. Sagittal and coronal
reformats were obtained.
Findings:
Chest:
The imaged thyroid gland is unremarkable. The thoracic aorta is normal in
caliber. The heart size is normal. There is no pericardial effusion.
There is no bulky mediastinal or hilar adenopathy.
There are mild paraseptal emphysematous changes in the lung apices. The
central airway is patent. There is a 3 mm nodule in the right upper lobe
adjacent to the right major fissure on series 2, image 33. There is a 3
mm nodule in the left upper lobe on series 2, image 16. There is a 3 mm
subpleural nodule in the left lower lobe on series 2, image 6 deep there
is no pulmonary consolidation. There is no pleural effusion or
pneumothorax.
There are no suspicious osseous lesions.
Abdomen and pelvis:
The liver, spleen, pancreas, and adrenal glands are grossly unremarkable.
There are no calcified gallstones. There is no biliary ductal dilatation.
The kidneys enhance symmetrically. There is mild fullness of the renal
collecting systems without hydronephrosis. There are no calculi along the
course of the ureters.
The abdominal aorta is normal in caliber. There are a are mild
atherosclerotic changes within the distal abdominal aorta and extending
to the common iliac arteries. The prostate gland is enlarged. The bladder
is grossly unremarkable. There are a few scattered small retroperitoneal
lymph nodes. There is no gross adenopathy.
There is moderate stool throughout the colon. The appendix is normal.
There is no bowel obstruction. The stomach is not well distended and not
well evaluated. There is subcutaneous emphysema within the right lateral
abdominal wall which is presumably related to subcutaneous injections.
There is a 9 mm lucent lesion within the left iliac knees 2, image 177 of
uncertain etiology. There are degenerative changes at the left
glenohumeral joint with subchondral cystic change.
Impression:

M.R. 2

**South Woods State Prison-Main**
  Bridgeton, NJ
  Fax:

**ERIC HINES**
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)


```
1. Scattered small pulmonary nodules. Followup chest CT in 1 year is
advised.
2. Subcentimeter lucent lesion within the left iliac bone of uncertain
etiology. Followup is recommended.
3. Constipation.
INTERPRETING PHYSICIAN:      MICHELLE STERLING MD M.D.
382281
```

**Electronically Signed by Sharmalie Perera, MD on 07/27/2015 at 11:43 AM**

---

**07/27/2015 - Append: CT CHEST/ABDOMEN/PELVIS W/ CONTR**
**Provider: Sharmalie Perera, MD**
**Location of Care: Northern State Prison-Main**


pt admitted at SFMC


**Electronically Signed by Sharmalie Perera, MD on 07/27/2015 at 11:46 AM**

---

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*July 30, 2018*
Page 1
Imaging Report

**ERIC HINES**
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**07/30/2015 - Imaging Report: MRI UPPER EXTR JOINT RT W/O CONT**
**Provider: Sharmalie Perera, MD**
**Location of Care: NJ Department of Corrections**

```
MRI UPPER EXTR JOINT RT W/O CONT
***Final Report***
REFERRING  AHMAR SHAKIR D.O
PHYSICIAN: 3705 QUAKERBRIDGE ROAD
    SUITE 103
    TRENTON, NJ 08619
Procedure Reason: right shoulder pain
Examination:  FMR 0234 - MRI UPPER EXTR JOINT RT W/O CONT
Date:    Jul 30 2015
RESULT:
MRI right shoulder.
History: Recent trauma, pain. No prior shoulder  MRI available for
comparison. Previous chest CT 7/25/2015.
There is supraspinatus tendinopathy with thickening and increased signal
in the tendon distally. There is a small linear focus of increased signal
in the tendon, for instance series 7, image 9, most likely reflects
tendinopathy. However, a small interstitial tear in the tendon near its
humeral insertion site is not ruled out. No evidence for full-thickness
rotator cuff tear is seen.
 There are mild nonspecific cystic changes in the humeral head. There is
no evidence for joint effusion or bursal fluid collection. There are
degenerative arthritic changes at the acromioclavicular joint.
Long head of the biceps tendon appears intact and normally located. No
gross evidence of glenoid labral tear is seen. The muscles demonstrate
normal morphology and signal characteristics. Regional marrow signal
otherwise is unremarkable
Impression:
1. Supraspinatus tendinopathy. No full-thickness rotator cuff tear. Small
interstitial supraspinatus tendon tear near its humeral insertion not
ruled out.
2. Acromioclavicular arthritis
Please see comments above.
INTERPRETING PHYSICIAN:    ETHAN TARASOV MD M.D.
382281
```

**Electronically Signed by Sharmalie Perera, MD on 07/30/2015 at 1:20 PM**

M.R. 3

**South Woods State Prison-Main**
  Bridgeton, NJ
  Fax:

*April 19, 2018*
Page 1
Consultation Report

## ERIC HINES
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**08/30/2016 - Consultation Report: ORTHOPEDIC CONSULTATION**
**Provider: Stacy Williams-Hall, APN**
**Location of Care: NJ Department of Corrections**

ORTHOPEDIC CONSULTATION

08/30/2016

        RE:  ERIC HINES
        DOB:  06/14/1965
        SBI#:  000146993B
        Ordering Provider:  CMSWI74

SOUTH WOODS STATE PRISON ORTHOPEDIC CLINIC

This is a 51-year-old patient who has had persistent shoulder pain.  This
patient has had previous surgery for impingement syndrome and rotator cuff
partial tear.  Pain persists despite the surgery.  The patient has recently
undergone an MRI arthrogram to evaluate the labrum as well as the biceps
tendon.  MRI shows thickening of the biceps tendon consistent with tendinitis.
In that the patient did not respond to additional therapy on anti-inflammatory
agent, additional surgery would be indicated.  This specific surgery will be
an arthroscopic assisted biceps tenodesis.


Scott Miller, MD

mts/1131428/31


**Electronically Signed by Stacy Williams-Hall, APN on 09/13/2016 at 7:04 AM**

PA 22

M.R. 4

## South Woods State Prison-Main
Bridgeton, NJ
Fax:

*April 19, 2018*
Page 1
Imaging Report

### ERIC HINES
Male DOB:06/14/1965 Booking #:663508 SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**01/20/2017 - Imaging Report: CT CHEST W/O CONTRAST**
**Provider: Stacy Williams-Hall, APN**
**Location of Care: NJ Department of Corrections**

```
CT CHEST W/O CONTRAST
***Final Report***
REFERRING   SHERITA LATIMORE-COLLIER
PHYSICIAN:


Procedure Reason: NODULES
Examination:  FCT 1250 - CT CHEST W/O CONTRAST
Date:    Jan 19 2017
RESULT:
History: Nodules.
Tomographic images, reformatted reconstructions.
Heart size normal. Mild nonspecific increased density anteriorly at the
right atrium.
Mediastinal, subcarinal lymph nodes size range of normal. Suboptimal for
evaluation for hilar adenopathy without contrast.
Apical and upper lobe blebs and small bulla. Small bleb right middle
lobe. Blebs inferior medially at the left upper lobe. Blebs anteriorly at
the right lower lobe.
Nodular appearing density right upper lobe medially on image 74 of series
2, small nodular appearing density anterior superiorly at the left upper
lobe on image 37, peripheral pleural nodular appearing density posterior
laterally at the left lower lobe on image 136 do not appear significantly
altered from the prior study of 7/26/2015, measuring about 3 mm. A
nodular appearing density anterior laterally at the right upper lobe on
image 81 measures about 2.7 mm, small nodular appearing density anterior
laterally at the right lower lobe on image 92 measuring about 2.7 mm, and
there is a nodular appearing density at the left lung near the fissure on
image 100 measuring about 3.4 mm which are also previously identified.
Suggest follow to assess for stability as clinically indicated.
Upper abdomen partially imaged. Gastric wall thickness about 2 cm.
Clinical evaluation advised.
Moderate fecal material visualized colon.
Scattered degenerative changes.
CONCLUSION:
Stable appearing lung nodules from 7/26/2015. Follow-up to assess for
stability as clinically indicated.
Other findings above.
FLEISCHNER RECOMMENDATIONS FOR FOLLOW-UP AND MANAGEMENT OF NODULES
SMALLER THAN 8 MM DETECTED INCIDENTALLY AT NONSCREENING.
CT Nodule Size(mm)
<4:
Low-Risk Patient: No follow-up needed.
High Risk Patient: Follow-up CT at 12 months; if unchanged no further
follow-up.
4-6:
Low-Risk Patient: Follow-up CT at 12 months; if unchanged, no further
follow-up.
High-Risk Patient: Initial Follow-up CT at 6-12 months, then at 18-24
months if no change.
```



PA 23                                   MR.5

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*April 19, 2018*
Page 2
Imaging Report

## ERIC HINES
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

>6-8:
Low-Risk Patient: Initial follow-up CT at 6-12 months, then at 18-24
months if no change.
High-Risk Patient: Initial follow-up CT at 3-6 months, then at 9-12
months and 24 months if no change.
>8:
Low-Risk Patient: Initial follow-up CT at around 3, 9 and 24 months.
Dynamic contrast-enhanced CT, PET, and/or biopsy.
High-Risk Patient: Same as for low-risk patient.
Note: Newly detected indeterminate nodule in persons 35 years of age or
older.
Low risk patients: Minimal or absent history of smoking and/or other
known risk factors.
High-risk patients: History of smoking or of other known risk factors,
such as first-degree relative with lung cancer, or exposure to asbestos,
radon, uranium.
If a nodule up to 8 mm is partly solid or is groundglass, further
follow-up is required after 24 months to exclude possible slow growing
adenocarcinoma.
This document has been electronically signed by: Eugene Klifto, D.O. on
1/20/2017 8:28 AM

INTERPRETING PHYSICIAN:      EUGENE KLIFTO, DO M.D.
382281

**Electronically Signed by Stacy Williams-Hall, APN on 01/23/2017 at 2:06 PM**
**Electronically Signed by Alan Dias, MD on 02/23/2017 at 3:22 PM**

PA 24

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*February 26, 2018*
Page 1
Imaging Report

## ERIC HINES

Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**02/08/2018 - Imaging Report: CT CHEST W/O CONTRAST**
**Provider: Angela Thomas, APN**
**Location of Care: NJ Department of Corrections**

```
CT CHEST W/O CONTRAST
***Final Report***
REFERRING   HESHAM SOLIMAN
PHYSICIAN:


Procedure Reason: LUNG NODULES
Examination:   FCT 1250 - CT CHEST W/O CONTRAST
Date:     Feb  8 2018
RESULT:
History: Nodules.
Axial images, reformatted reconstructions. Automated Dose Control
Measures and NEMA XR29 DOSE Check Software were utilized to reduce
radiation dose to the patient.
Heart size normal.
Mediastinal and subcarinal lymph nodes normal limits. Not adequate for
evaluation for hilar adenopathy.
Scattered blebs and small bulla, appearing more numerous superiorly in
the thorax, and in the lung apices. Small linear atelectatic and
irregular dependent lung changes. Small nodular or subpleural lung
densities not appearing significantly altered from 1/6/2016. Also
described 1/19/2017. Suggest follow as clinically indicated.
Upper abdomen partially imaged.
Gastric wall thickness up to about 2.5 cm. Clinical evaluation advised.
Moderate fecal material visualized colon. Colon diverticula.
Bile duct diameter about 6.5 mm.
CONCLUSION:
No significant chest appearance change from 1/6/2016.
Other findings above.
This document has been electronically signed by: Eugene Klifto, D.O. on
2/8/2018 11:34 AM

INTERPRETING PHYSICIAN:      EUGENE KLIFTO, DO M.D.
382281
```

**Electronically Signed by Angela Thomas, APN on 02/12/2018 at 8:59 AM**

---

**02/12/2018 - Append: CT CHEST W/O CONTRAST**
**Provider: Angela Thomas, APN**
**Location of Care: NJ Department of Corrections**


Noted


**Electronically Signed by Angela Thomas, APN on 02/12/2018 at 8:59 AM**

---

PA 25

MR. 6

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*May 21, 2018*
Page 1
Consultation Report

**ERIC HINES**
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**04/25/2018 - Consultation Report: GASTROENTEROLOGY CONSULTATION**
**Provider: Angela Thomas, APN**
**Location of Care: NJ Department of Corrections**

GASTROENTEROLOGY CONSULTATION

04/25/2018

RE:  ERIC HINES
DOB:  06/14/1965
SBI#:  000146993B
Ordering Provider:  cmsth68

This is a 52-year-old African American male, referred for GI evaluation
because of longstanding history of gastroesophageal reflux disease.  The
patient had a CT scan of the chest done, which revealed gastric wall thickness
up to 2.5 cm.  Question of gastric neoplasm was raised.  The patient denies
any nausea, vomiting, hematemesis, weight loss, etc.

ESOPHAGOGASTRODUODENOSCOPY AND BIOPSY:
The procedure, complications, and alternatives were explained to the patient
and informed consent was obtained from him for EGD and biopsy.  After
monitoring vital signs, he was placed in left lateral position and an EGD was
then performed.  The examination revealed normal esophagus.  The stomach had
some prominent _____, but  there was no ulceration and/or tumor formation.  A
biopsy was obtained from the antrum to rule out H. pylori infection.  The
pylorus, otherwise, was normal.  The duodenal bulb and 2nd portion of the
duodenum were within normal limits.

The patient tolerated the procedure well and postprocedure instructions were
sent with him.

RECOMMENDATIONS:
Further treatment will depend on gastric biopsy.

Bhanwaral Chowdhury, MD

mts/1746692/31

**Electronically Signed by Angela Thomas, APN on 05/09/2018 at 4:15 PM**

M.R.7

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*May 21, 2018*
Page 2
Office Visit

**ERIC HINES**
Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**Mental Status Exam**
**Orientation:** oriented to time, place, and person

* NKA (Critical)

Medications:

DULCOLAX 5 MG ORAL TABLET DELAYED RELEASE (BISACODYL) 1 tab PO daily PRN x 365

**Plan:**
At the request of psych they participated in visit today. RN in room.
EGD -
CBC - WNL
OB #1 negative , #2 done with rectal - negative
Questeran dc'd
US lower abd r/o appe
increase water
bowel regimen orders
Let it be noted. that pt was mad at me bc I was only handling his rectal bleeding situation today.

**Disposition**
**Disposition:** return for followup
**Return in:** Prn

**Copay**

**Medical Copay Charged:** 5
**Medication Copay Charged:** 1

**Orders to be Processed and/or Transcribed**

**New or Changed Medications & Immunizations**
DULCOLAX 5 MG ORAL TABLET DELAYED RELEASE (BISACODYL) 1 tab PO daily PRN x 365

**Discontinued Medications & Immunizations**
CHOLESTYRAMINE LIGHT 4 GM ORAL PACKET (CHOLESTYRAMINE LIGHT) 1 pack in applesauce
po tid x 365 days

**Labs, Consults, Tests&Procedures, Clearances, Restrictions, Referrals, etc.**
U/S - Other [REFOTP031]

M.R. 8

#UU3508

# St Francis Medical Center
## 601 Hamilton Ave
## Trenton, NJ 08629
### (609) 599-5280

**Name:** HINES, ERIC
**MR#:** 382281
**Study#:** 18-EMG-103
**Source:**
**Referring Physician:** SOUTHWOODS
**Examining Physician:** TABOADA, MD JAVIER
**Technician:** Y. HILL

**Date of Birth:** 6/14/1965
**Gender:** Male
**Exam Date:** 5/11/2018
**Height:** 5'9"
**Weight:** 140 Lbs

**History:**

52 years old AAM inmate with history of weakness on both legs and urinary incontinence, syptoms developed on 2009 after he was restrained by shock hold of his neck. Patient has weakness on both legs, tendency to fall when attempting to get up or walk, he uses wheelchair.

**Findings:** Nerve conduction velocities on both lower extremities are in the low normal range. Motor and sensory distal latencies are WNL including sural nerves. Rare denervation signs were found in the lower extremities muscles but there are decrease voluntary MUP recruitment in both lower extremities. ,

**Conclusion :Upper motor neuron syndrome, secondary to cervical spine myelopathy.**

**Javier Taboada, M.D**
**NEUROLOGIST**

401800284923 000146993B BAP   382281
LN: HINES
FN: ERIC                                    06/14/1965
TABOADA, JAVIER G MD    05/11/18   11:34   M   52   T



**ST FR   .CIS MEDICAL CENTER**
601 HAMILTON AVE TRENTON, NJ 08629
(609) 599-5000
**Department of Medical Imaging**

RE:  **HINES, ERIC**
     **DOB:** 06/14/1965
     **SEX:** M
     **LOCATION:** Outpatient

**ORD #:** 90015     **Date of Exam:** 07/17/2018
**MRN #:** 382281     **Discharge Dt:**
**ADM #:** 401800397434
**Accession #:** 1997772

---

***Final Report***

**REFERRING**   SHERITA LATIMORE-COLLIER
**PHYSICIAN:**

*Wce'BSOB*

**Procedure Reason:** EVAL

**Examination:** FMR 0551 - MRI BRAIN W/O CONTRAST

**Date:**   Jul 17 2018

**RESULT:**
**CLINICAL INDICATION: CVA, lower extremity weakness.**

**DIAGNOSIS:**

**Trace white matter changes as described, unchanged since previous exam, likely due to chronic small vessel ischemic changes..**

**COMMENT:**

**Multi-planar MR examination of the brain was performed utilizing multiple T1, intermediate, and T2 pulse weighted sequences. Comparison is made study from 7/25/2015.**

**There are minimal white matter changes scattered within the periventricular and subcortical white matter bilaterally. This is presumably secondary to chronic small vessel ischemic changes. Findings are unchanged since prior study. Clinical correlation is advised.**

**There is no evidence of mass, mass-effect, sulcal effacement, midline shift. There is no evidence of intracranial hemorrhage or acute territorial infarction. There is no hydrocephalus or midline shift.**

**The paranasal sinuses are unremarkable.**

**This document has been electronically signed by: Glenn Articolo, MD on 7/17/2018 3:52 PM**

**Thank you for choosing St. Francis Medical Center**

Interpreting Physician: GLENN ARTICOLO, MD M.D.
Addending Physician: ARTICOLO, MD M.D., GLENN

Signoff Date: Jul 17 2018  3:52PM   Transcribed by: PSC   Transcribed Date: Jul 17 2018  3:52PM   End Proc Dtime:Jul 17 2018 12:03PM

---

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

*July 30, 2018*
Page 1
Imaging Report

## ERIC HINES

Male  DOB:06/14/1965  Booking #:663508  SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**07/17/2018 - Imaging Report: MRI BRAIN W/O CONTRAST**
**Provider: Jennifer Farestad, AGNP-C**
**Location of Care: NJ Department of Corrections**

```
MRI BRAIN W/O CONTRAST
***Final Report***
REFERRING   SHERITA LATIMORE-COLLIER
PHYSICIAN:


Procedure Reason: EVAL
Examination:  FMR 0551 - MRI BRAIN W/O CONTRAST
Date:    Jul 17 2018
RESULT:
CLINICAL INDICATION: CVA, lower extremity weakness.
DIAGNOSIS:
Trace white matter changes as described, unchanged since previous exam,
likely due to chronic small vessel ischemic changes..
COMMENT:
Multi-planar MR examination of the brain was performed utilizing multiple
T1, intermediate, and T2 pulse weighted sequences. Comparison is made
study from 7/25/2015.
There are minimal white matter changes scattered within the
periventricular and subcortical white matter bilaterally. This is
presumably secondary to chronic small vessel ischemic changes. Findings
are unchanged since prior study. Clinical correlation is advised.
There is no evidence of mass, mass-effect, sulcal effacement, midline
shift. There is no evidence of intracranial hemorrhage or acute
territorial infarction. There is no hydrocephalus or midline shift.
The paranasal sinuses are unremarkable.
This document has been electronically signed by: Glenn Articolo, MD on
7/17/2018 3:52 PM

INTERPRETING PHYSICIAN:    GLENN ARTICOLO, MD M.D.
382281
```

**Electronically Signed by Jennifer Farestad, AGNP-C on 07/19/2018 at 9:04 AM**

M.R. 11

**South Woods State Prison-Main**
Bridgeton, NJ
Fax:

**ERIC HINES**
Male DOB:06/14/1965 Booking #:663508 SBI:000146993B
Ins: NJDOCIC (NJDOCIP)

**07/18/2018 - Imaging Report: MRI CERVICAL SPINE W/O CONTRAST**
**Provider: Jennifer Farestad, AGNP-C**
**Location of Care: NJ Department of Corrections**

```
MRI CERVICAL SPINE W/O CONTRAST
***Final Report***
REFERRING   SHERITA LATIMORE-COLLIER
PHYSICIAN:


Procedure Reason: EVAL
Examination:   FMR 2141 - MRI CERVICAL SPINE W/O CONTRAST
Date:     Jul 17 2018
RESULT:
CLINICAL INDICATION: Pain
DIAGNOSIS:
Interval resolution of left paracentral disc protrusion of C3-4.
Small disc osteophyte complexes of C3-4 and C4-5, with mild to moderate
central canal narrowing of C3-4..
COMMENT:
Multi-planar MR examination of the cervical spine was performed utilizing
multiple T1, intermediate, and T2 pulse weighted sequences. Comparison is
made to prior study from 5/18/2016.
There is anatomic alignment of the cervical spine without evidence of
acute cervical spine fracture or spondylolisthesis.
There is no evidence of significant disk space narrowing.
The cord is normal in signal and caliber throughout. The cerebellar
tonsils appear well-seated.
C3-4: There has been interval resolution of the previously seen left
paracentral disc protrusion of C3-4. At the C3-4 level, there remains a
small disc osteophyte complex. There is bilateral uncovertebral and facet
hypertrophy. This contributes to mild-to-moderate central canal narrowing.
C4-5: At the C4-5 level, there is a small disc osteophyte complex,
causing minimal central canal narrowing.
There is no evidence of significant central canal or neuroforaminal
narrowing at the remaining levels.
This document has been electronically signed by: Glenn Articolo, MD on
7/18/2018 4:49 PM

INTERPRETING PHYSICIAN:     GLENN ARTICOLO, MD M.D.
382281
```

**Electronically Signed by Jennifer Farestad, AGNP-C on 07/19/2018 at 8:42 AM**

M.R.12

ERIC HINES #663508/146993B

SOUTH WOODS STATE PRISON
215 BURLINGTON ROAD SOUTH
BRIDGETON, NJ 08302

NEOPOST                    FIRST-CLASS MAIL

10/29/2019
US POSTAGE $001.60⁰

ZIP 08302
041M11297259

HON. NOEL L. HILLMAN, U.S.D
UNITED STATES DISTRICT COURT
P.O. BOX 2797
CAMDEN, N.J. 08101

RECEIVED
OCT 30 2019
AT 8:30
WILLIAM            M

LEGAL MAIL