UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                 :
ERIC HINES,                      :
                                 :
        Plaintiff,               :   Civ. No. 17-2864 (NLH) (MJS)
                                 :
    v.                           :   OPINION
                                 :
                                 :
GARY M. LANIGAN, et al.,         :
                                 :
        Defendants.              :
                                 :
_____:

APPEARANCES:

Solomon M. Radner, Esq.
Radner Law Group PLLC
17515 West Nine Mile Rd
Southfield, MI 48075

        *Attorneys for Plaintiff*

Matthew J. Platkin, Attorney General of New Jersey
Marvin L. Freeman, Deputy Attorney General
New Jersey Attorney General's Office
R.J. Hughes Justice Complex
25 Market Street - P.O. Box 112
Trenton, NJ 08625

        *Attorneys for Defendants New Jersey Department of
Corrections, Lanigan, Bonds, Marin (aka Marvin), Waters, Vallie,
Hicks, Jackson, Moratelli, Smith, Goffred, McNear, and Horsey*


HILLMAN, District Judge

        Plaintiff Eric Hines is proceeding on his Fourth Amended

Complaint ("FAC"), ECF No. 119, against Defendants New Jersey

Department of Corrections ("NJDOC"), former NJDOC Commissioners

Gary Lanigan and Marcus Hicks, NJDOC Deputy Director Willie

Bonds, Corrections Officers E. Marin (aka Marvin), Waters, T. Jackson, Moratelli, L. Smith, Goffred, McNear, and Sergeants Vallie, Horsey, and Jackson.  Defendants have moved for summary judgment.  ECF No. 137.  Plaintiff opposes the motion.  ECF No. 140.  Defendants filed a reply in further support of their motion.  ECF 142.  Defendants also accepted the Court invitation, ECF 144, to file evidence to support their affirmative defense of failure to exhaust administrative remedies.  ECF 147.

For the reasons herein, the Court will grant the motion and enter judgment in Defendants' favor.

## I.    BACKGROUND[1]

Plaintiff, a convicted and sentenced state prisoner, was confined in East Jersey State Prison ("EJSP") in 2015.  DSOF ¶ 1.  He was transferred from EJSP to South Woods State Prison ("SWSP") on July 30, 2015.  Id.   He

---

[1] These facts are derived from Defendants' Local Civil Rule 56.1 Statement of Material Facts and the exhibits specifically referenced.  Defendants' Statement of Material Facts, ECF No. 137-2 ("DSOF").  Plaintiff's "Statement of Facts," ECF No. 140 at 1, does not comply with Local Civil Rule 56.1 because it does not "address[ ] each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion...." Local Civ. R. 56.1(a).  Accordingly, the Court adopts Defendants' Rule 56.1 Statement because "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted."  Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000); see also Local Civ. R. 56.1(a).

On April 26, 2017, Plaintiff filed an application for in forma pauperis without an accompanying complaint.  Id. ¶ 2; ECF No. 1..  The Court denied the in forma pauperis application without prejudice.  ECF No. 2.  Plaintiff, at that time acting pro se, submitted a new in forma pauperis application and an amended complaint raising claims under Title II of the Americans with Disabilities Act ("ADA"), as well as First and Eighth Amendment claims under 42 U.S.C. § 1983.  ECF No. 4.  The Court granted the in forma pauperis application on November 15, 2017.  ECF No. 6.

On September 24, 2018, Plaintiff filed another motion to amend.  ECF No. 10.  The Court granted the motion on January 18, 2019, and directed Plaintiff to file a second amended complaint within 30 days.  ECF No. 12.  Plaintiff obtained counsel, who filed a second amended complaint on March 27, 2019.  ECF No. 18.  The Court permitted the second amended complaint to proceed.  ECF No. 19.

Plaintiff filed a pro se motion to file an "all-inclusive" third amended complaint on January 7, 2020.  ECF No. 47.[2]  Magistrate Judge Joel Schneider granted the motion on July 15, 2020.  ECF No. 58.

_____

[2] Plaintiff's Counsel at that time was permitted to withdraw on October 16, 2019.  ECF No. 41.

Defendant Scott Miller filed a motion for summary judgment based on Plaintiff's failure to provide an affidavit of merit for Plaintiff's medical negligence claims.  ECF No. 67.  The Court granted the motion and entered judgment in favor of Defendant Miller on October 26, 2021.  ECF No. 83.  The Court granted Defendant Sharmalie Perera's unopposed motion to dismiss on November 5, 2021.  ECF No. 87.  Defendant Miller's crossclaims were dismissed on December 9, 2021.  ECF No. 88.

Plaintiff, now represented by current counsel, filed the FAC on March 31, 2023.  DSOF ¶ 12.  The FAC alleges Defendants NJDOC, Lanigan, Hicks, and Bonds violated Title II of the ADA by failing to put Plaintiff, who is confined to a wheelchair and uses a catheter, in an accessible cell.  FAC ¶¶ 6-9.  He alleges that he fell and injured his shoulder while in EJSP.  Id. ¶ 7. He alleged his SWSP cells were non-ADA compliant until 2021. Id. ¶ 8.  Plaintiff also alleged that Defendants Lanigan, Hicks, and Bonds violated the Eighth Amendment by putting him into cells that were "infested with spiders, frogs, mice, and crickets . . . ."  Id. ¶ 11.  He alleged that Defendant Waters violated the Eighth Amendment by using excessive force during a strip search, id. ¶ 15, and that Defendants Perry, Vallie, Petit, Marin, Jackson, Moratelli, Smith, Horsey, and McNear retaliated against him when he filed a Prison Rape Elimination Act ("PREA") complaint against Defendant Waters, id. ¶¶ 19-28.

Plaintiff dismissed his claims against Defendants Perry and Petit on June 20, 2023.  ECF No. 133.  As noted above, the remaining defendants filed a motion for summary judgment on July 3, 2023.  ECF No. 137.  That motion is now fully briefed and ripe for adjudication.

## II.  STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 250.  The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported

motion for summary judgment." Anderson, 477 U.S. at 257.
"While the evidence that the non-moving party presents may be
either direct or circumstantial, and need not be as great as a
preponderance, the evidence must be more than a scintilla."
Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

## III. DISCUSSION

### A.   Failure to Exhaust

Defendants assert the FAC must be dismissed because
Plaintiff failed to exhaust his administrative remedies.  ECF
No. 137-1 at 18.  Under the Prison Litigation Reform Act,
("PLRA"), prisoners must "exhaust 'such administrative remedies
as are available' before bringing suit to challenge prison
conditions." Ross v. Blake, 578 U.S. 632, 635 (2016) (quoting
42 U.S.C. § 1997e(a)).  This includes constitutional claims,
Woodford v. Ngo, 548 U.S. 81, 91 n.2 (2007), and "applies to all
inmate suits about prison life, whether they involve general
circumstances or particular episodes, and whether they allege
excessive force or some other wrong." Porter v. Nussle, 534
U.S. 516, 532 (2002).  See also Bayete v. Dep't of Corr., No.
22-2975, 2023 WL 8827474, at *3 (D.N.J. Dec. 21, 2023) (noting
exhaustion requirement applies to ADA claims).

The PLRA's "language is 'mandatory': An inmate 'shall'
bring 'no action' (or said more conversationally, may not bring
any action) absent exhaustion of available administrative

remedies." <u>Ross</u>, 578 U.S. at 638-39 (citing <u>Woodford</u>, 548 U.S. at 85).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007).

A district court may decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. <u>Paladino v. Newsome</u>, 885 F.3d 203, 211 (3d Cir. 2018); <u>Small v. Camden Cnty.</u>, 728 F.3d 265, 270 (3d Cir. 2013).  The Court provided notice to the parties on January 5, 2024.  ECF No. 144.  In support of their motion, Defendants have submitted copies of relevant grievances and inquiries filed by Plaintiff, ECF No. 137-8 at 56-101; the 2019 EJSP Inmate Handbook, <u>id.</u> at 103-11; and the 2017 SWSP Inmate Handbook, <u>id.</u> at 113-26.  Defendants submitted the Declaration of Steven Jonaitis ("Jonaitis Dec.") in response to the Court's <u>Paladino</u> notice.  ECF No. 147.  Plaintiff did not submit any material in response to the <u>Paladino</u> notice.

"The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." <u>Rinaldi v. United States</u>, 904 F.3d 257, 268 (3d Cir. 2018).  "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust <u>each</u> of his claims.  There is no 'total exhaustion' rule permitting dismissal of an entire action because of one

unexhausted claim."  Small, 728 F.3d at 269 (emphasis in
original).  "[O]nce the defendant has established that the
inmate failed to resort to administrative remedies, the onus
falls on the inmate to show that such remedies were unavailable
to him."  Rinaldi, 904 F.3d at 268.

    *1.   Count One – Americans With Disabilities Act*

Count One alleges a violation of the ADA against the
Defendants NJDOC and Lanigan, Hicks, and Bonds in their official
capacities.  FAC ¶¶ 5-9.  According to the FAC, Plaintiff was
placed into a non-accessible cell in EJSP on June 7, 2015.  Id.
¶ 7.  A few days later, he fell and injured his shoulder.  Id.
The injury required surgery.  Id.  Plaintiff was transferred to
SWSP on July 30, 2015.  DSOF ¶ 1.

While at SWSP, Plaintiff "was placed in an ADA compliant
cell in about August 2016 for a few days and then taken to a
medical unit for a few days, after which he was then moved to a
non-compliant cell in D Building from October 2016 through
August 2021 . . . ."  FAC ¶ 8.

The Court considers the SWSP Handbook to provide the
relevant administrative process because the submitted EJSP
Handbook is the 2019 edition.  ECF No. 137-8 at 103.  Plaintiff
was transferred to SWSP on July 30, 2015.  DSOF ¶ 1.  SWSP uses
JPay kiosks to file and track inmate grievances and inquires.
ECF No. 137-8 at 125; Jonaitis Dec. ¶¶ 10-20.  "Staff who

receive the remedy form can review the form through the JPay system and provide a response electronically.  When a response is provided, it is also submitted electronically and can be accessed . . . through the 'Communications Center' option." Jonaitis Dec. ¶ 22.  The JPay kiosks are also used to submit appeals of staff responses to grievances.  Id. ¶ 23.  "Appeals to grievance forms are tracked under the same reference number as the initial submission."  Id. ¶ 26.  "Appeal decisions shall be rendered by the administrator and are therefore to be considered as final decisions at the correctional facility level."  ECF No. 137-8 at 122.

Plaintiff submitted Grievance 16077 on September 8, 2015, stating "[your] refusal to respond to inmate inquiry has violated my rights to redress as a ada in wheelchair with a disability and not being afforded just what other inmates are is a [violation] of the disability act.  I will pursue these channel [sic] for relief."  Id. at 83.  Prison officials responded on September 8, 2015 asking Plaintiff to be more specific on the form and stating that they were unable to find any unanswered forms.  Id.  The same official filed another response on September 18, 2015, asking Plaintiff to state his request.  Id.  A different official wrote on November 4, 2015 that "[i]f this is medical issue, you must submit medical form located on your housing unit.  If you have an ADA grievance you

may submit ADA grievance form." Id.  Plaintiff never appealed
this grievance, making it unexhausted.

Plaintiff submitted Inquiry 026772 on October 14, 2015
stating that he had previously requested help because he was
unable to get on and off the toilet without assistance. Id. at
77.  He said that he was still waiting for an answer to that
request and stated "[a]lso every complaint dealing with [ADA]
that I have submitted, redress has been refused." Id.  The
inquiry was rejected on October 19, 2015 because the inquiry had
"more than one (1) concern that this system can handle." Id.
"Unlike a Grievance, an Inquiry Form is not subject to an
administrative appeal; therefore, they do not suffice for
exhaustion." Jonaitis Dec. ¶ 33.  Therefore, this inquiry does
not comply with the SWSP administrative remedy program.

Plaintiff submitted Grievance 250380 on October 30, 2016
alleging that he was being denied medical supplies or supplies
to clean his diaper in violation of the ADA.  ECF No. 137-8 at
61.  Prison officials responded on November 21 and 28, 2016.
Id.  Plaintiff did not appeal, making this grievance
unexhausted.

Plaintiff submitted an inquiry on December 13, 2017,
asserting that the SWSP medical director failed to supervise a
doctor who did not provide Plaintiff with medical supplies or

10

supplies to clean his diaper.  Id. at 56.  This inquiry does not comply with the SWSP administrative remedy program.

Plaintiff filed Grievance 806638 on March 6, 2018.  Id. at 67.  The grievance stated that "Commissioner and prison official violating title 2 of the [ADA].  Housing [ADA] wheelchair inmates in cells unaccessible [sic] to handicaps."  Id.  A prison official responded on March 12, 2018, stating "[p]er policy and procedures, inmates in wheelchair are house [sic] at handicaps unit."  Id.  Plaintiff submitted an appeal on March 24, 2018, asking "[t]hen please explain to me why cell 1026 has [no] hand[i]cap railing to prevent accident.  Your action[s] are violating Title 2 of American with disability act and rehabilitation act because you receive federal money."  Id.  Defendant Bonds responded on April 30, 2018: "Mr. Hines please note that I am having this matter researched.  Once I receive the needed information a response will be provided."  Id.

Defendants argue that Plaintiff did not properly exhaust his ADA claim in part because he did not file any grievances within 10 days of his June 2015 accident.  ECF No. 137-1 at 22-23; DSOF ¶ 27.  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting

Woodford v. Ngo, 548 U.S. 81, 88 (2007)).  However, Grievance
806638 is considered exhausted because Defendant Bonds
considered the merits of the grievance instead of rejecting it
on procedural grounds.  See Rinaldi v. United States, 904 F.3d
257, 271 (3d Cir. 2018) (holding claim is exhausted "where a
prison disregards its own procedures and rejects an inmate's
otherwise procedurally defaulted complaint on the merits"); Camp
v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (finding prisoner
exhausted PLRA remedies when the "allegations have been fully
examined on the merits by the ultimate administrative authority"
(emphasis in original)).

Although Grievance 806638 was exhausted, Plaintiff did not
comply with the PLRA because he completed exhaustion after he
filed his § 1983 complaint in 2017.  "The [PLRA] prohibits an
inmate from bringing a civil rights suit alleging specific acts
of unconstitutional conduct by prison officials 'until such
administrative remedies as are available are exhausted.'"
Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006)
(per curiam) (emphasis in original) (quoting 42 U.S.C. §
1997e(a)).  See also Porter v. Nussle, 534 U.S. 516, 524 (2002)
("[E]xhaustion is a prerequisite to suit.").  "[T]here appears
to be unanimous circuit court consensus that a prisoner may not
fulfill the PLRA's exhaustion requirement by exhausting
administrative remedies after the filing of the complaint in

federal court." Oriakhi, 165 F. App'x at 993. See also Thornton v. West, 529 F. App'x 107, 110 (3d Cir. 2013) (per curiam) ("Because Thornton filed his medical grievance after commencing this action, his claims were not properly exhausted."); Aaron v. Whetsel, 147 F. App'x 5 (10th Cir. 2005) (holding inmate's failure to exhaust his administrative remedies before filing complaint required dismissal of his § 1983 action even though he subsequently exhausted his administrative remedies); Johnson v. Ozmint, 567 F. Supp. 2d 806, 815 (D.S.C. 2008) ("[A]ny grievances that Plaintiff has filed since the filing of this lawsuit would not entitle him to proceed on these claims."). Therefore, Plaintiff's ADA claim is subject to dismissal for failure to exhaust because Plaintiff did not complete the exhaustion process before filing suit.

2.   *Count Two – Conditions of Confinement*

Count Two of the FAC alleges Defendants Lanigan, Hicks, and Bonds placed Plaintiff into a cell "that was infested with spiders, frogs, mice, and crickets in 2016, 2017, 2018." FAC ¶ 11. He alleges they placed him "in this particular cell knowing he would be subjected to these conditions." Id. ¶ 12. Plaintiff failed to exhaust this claim.

Plaintiff filed Inquiry SWSP18036403 on October 17, 2018 complaining about "[e]xposure to insects, crickets, spiders, frogs, and other vermin." ECF No. 137-8 at 71. "Unlike a

Grievance, an Inquiry Form is not subject to an administrative appeal; therefore, they do not suffice for exhaustion." Jonaitis Dec. ¶ 33.  This inquiry does not comply with the SWSP administrative remedy program.

Plaintiff also filed Grievance SWSP18038005 stating that "[s]everal complaints submitted on 10/30/2016 and 1/23/2017 about exposure to constant insects, crickets, spider, frogs, and other vermin."  ECF No. 137-8 at 74.  A prison official responded on October 29, 2018, saying "[y]our issues is [sic] being referred to the Custody Department for investigation." Id.  Plaintiff did not file an appeal as required by SWSP procedures.  Id.; id. at 122 ("Appeal decisions shall be rendered by the administrator and are therefore to be considered as final decisions at the correctional facility level.").  See also Jonaitis Dec. ¶ 32.  Plaintiff did not properly exhaust the claims in Count Two.

3.   *Count Three – Excessive Force During Strip Search*

Plaintiff alleges in Count Three that Defendant Waters "intentionally pulled out Mr. Hines' catheter and grabbed his penis, didn't allow Mr. Hines to put on a diaper, and interfered with Mr. Hines' prescribed medications" during a strip search on October 17, 2016.  FAC ¶ 15.  He also alleges that he was retaliated against for filing a PREA complaint against Defendant Waters.  Id. ¶ 16.

Plaintiff submitted Inquiry 242073 on October 20, 2016 alleging that Defendant Waters violated the ADA by not giving Plaintiff privacy to change his catheter and diaper.  ECF No. 137-8 at 76.  This Inquiry does not allege excessive force during the strip search, so it is not enough to put prison officials on notice of Plaintiff's claim.  "The point of the grievance is to alert prison officials to a problem, so they have an opportunity to correct it.  The wrong to which a prisoner must alert the prison officials cannot be construed so broadly as to undermine the basic purpose of the grievance process."  Olivares v. United States, No. 07-3476, 2010 WL 5251429, at *6 (D.N.J. Dec. 16, 2010), aff'd, 447 F. App'x 347 (3d Cir. 2011).  See also ECF No. 137-8 at 120 (requiring remedy forms to "include a summary of the requested information or presented issues, concerns or complaints").  Moreover, an inquiry is insufficient to exhaust administrative remedies.  Jonaitis Dec. ¶ 33.

Plaintiff filed Grievance SWSP18000345 on March 14, 2018 alleging that former Defendant Perry failed to investigate Plaintiff's PREA complaint against Defendant Waters and threatened to retaliate against Plaintiff for filing the PREA complaint.  Id. at 81.  Prison administration filed a response on March 20, 2018 stating that "[t]his matter is being referred to PREA for review and response."  Id.  Plaintiff appealed on

March 28, 2018 objecting to the lack of investigation and making more allegations of retaliation by former Defendants Perry and Petit.  Id.  Prison administration responded "Noted" on April 3, 2018.  Id.

Plaintiff filed Grievance SWSP18000835 on March 17, 2018 alleging that former Defendant Petit retaliated against Plaintiff for filing the PREA complaint against Defendant Waters.  Id. at 80.  Prison administration filed a response on March 22, 2018 stating that "[t]his matter is being referred to the Special Investigations Division and PREA here at Central Office for review and response."  Id.  Plaintiff submitted an appeal on March 28, 2018 referring the administration to Grievance SWSP18000345 as the appeals "originated from the same source."  Id.  There was no further response to Grievance SWSP18000835.  Id.

Plaintiff filed Grievance SWSP18032627 on September 25, 2018.  Id. at 79.  The initial filing alleged that Plaintiff was being threatened by Defendants Waters and Vallie and requested a housing change.  Id.  Prison administration filed a response on October 24, 2018 stating that "[t]his matter is being referred to the Special Investigations Division here at Central Office for review and response."  Id.  In his October 26, 2018 appeal, Plaintiff wrote "Sco. Waters stripped search me twice, and then had the nerve to snatch the catheter out of inmates penis."  Id.

Prison administration responded on October 31, 2018, "[t]his will also be forwarded to SID." Id.

Grievances SWSP18000345 and SWSP18000835 do not serve to exhaust Plaintiff's claim against Defendant Waters because they concern the alleged acts of retaliation that followed the strip search, not the use of force during the strip search. ECF No. 137-8 at 81. Even if Grievance SWSP18032627 served to exhaust the excessive force claim despite not mentioning the strip search until the appeal, exhaustion did not take place until after Plaintiff filed his § 1983 complaint. This claim is subject to dismissal because Plaintiff did not complete exhaustion before filing his suit. Thornton v. West, 529 F. App'x 107, 110 (3d Cir. 2013) (per curiam).

   4.  *Count Four – Retaliation*

The final count of the FAC alleges Defendants Vallie, Marin, Jackson, Moratelli, Smith, McNear, and Horsey violated the First Amendment by retaliating against Plaintiff for filing the PREA complaint against Defendant Waters. FAC ¶¶ 20-28.

      a.  Defendant Vallie

According to Plaintiff, Defendant Vallie told him on November 8, 2016 that he "hope[d] they beat the shit out of [Plaintiff] for 'ratting on officers.'" Id. ¶ 20. Plaintiff submitted Grievance SWSP18000721 on March 17, 2018 making a similar allegation against Defendant Vallie. ECF No. 137-8 at

92.  Prison administration filed a response on March 22, 2018
stating that "[t]his matter is being referred to the Special
Investigations Division here at Central Office for review and
response."  Id.  Plaintiff submitted an appeal on March 28, 2018
referring the administration to Grievance SWSP18000345 as the
appeals "originated from the same source."  Id.  There was no
further response to Grievance SWSP18000721.  Id.

This claim is subject to dismissal because Plaintiff did
not complete exhaustion before filing his suit.

b.  Defendant Marin

Plaintiff alleged that Defendant Marin called him a "rat"
and told other inmates that Plaintiff raped children.  FAC ¶ 22.
Plaintiff alleged this occurred around July 7, 2019.  Id.
Plaintiff also alleged that Defendant Marin allowed other
inmates to steal Plaintiff's property.  Id.

Plaintiff submitted Grievance SWSP19030736 on July 17, 2019
that stated Defendant Marin "allowed inmates unescorted to pack
personnal [sic] property, a piece of picture was in the toilet."
ECF No. 137-8 at 85.  He asked that the video footage be
retained for this Court's review.  Id.  Prison officials
responded on July 19, 2019.  Id.  One stated that this was
"[n]ot an S.I.D. grievance.  Will be forwarded to
administration."  Id.  The next response directed Plaintiff to
file an Open Public Records Act ("OPRA") request form.  Id.

Plaintiff responded on July 20, 2019: "Your failure to act concerning previous grievances of retaliation are not of concern, I [am] putting this administration on notice, making a formal request to retain video footage of incident for the court's review."  Id.  On August 2, 2019, the administrator responded by directing Plaintiff to the prior answer that told Plaintiff to file an OPRA request.  Id.

Plaintiff has not exhausted his allegations that Defendant Marin called him a "rat" and rapist in front of other inmates because Grievance SWSP19030736 does not make these claims.  See Id. at 120 (requiring remedy forms to "include a summary of the requested information or presented issues, concerns or complaints").  However, Plaintiff did exhaust his claim that Defendant Marin permitted other inmates to take Plaintiff's personal property on July 7, 2019.  The grievance sufficiently alerted prison officials that Plaintiff claimed Defendant Marin was retaliating against him for his participation in this lawsuit.  Therefore, only Plaintiff's allegations that Defendant Marin called him a "rat" and rapist are subject to dismissal for failure to exhaust.[3]

     c.   Defendant Jackson

---

[3] Since the alleged retaliation did not take place until July 2019, Plaintiff could not have exhausted his remedies for this claim before he filed the original complaint.

Plaintiff alleges Defendant Jackson told him that he "would let [Plaintiff's] property get stolen because of the PREA on an officer."  FAC ¶ 23.  Plaintiff alleged "[t]his happened on four separate occasions between 11/20/16-11/20/19."  Id.

Plaintiff alleged in the same grievance that made the retaliation allegation against Defendant Marin, Grievance SWSP19030736, that Defendant Jackson "returned property Jplayer headphone, 2pk of batteries, and pictures were missing."  ECF No. 137-8 at 85.  This is insufficient to exhaust Plaintiff's claim because it does not sufficiently alert prison officials that Plaintiff is alleging Defendant Jackson acted out of retaliation.

Plaintiff only alleges that Defendant Jackson returned Plaintiff's property with some items missing.  Id.  In contrast, Plaintiff specifically alleges Defendant Marin "has retaliated before . . . ."  Id.  Read as a whole, the grievance appears to blame Defendant Marin for Plaintiff's missing property because Defendant Marin allowed other inmates to pack Plaintiff's property and has a history of retaliation.  The grievance does not sufficiently alert prison officials that Plaintiff was alleging that Defendant Jackson told Plaintiff that he would allow Plaintiff's property to be stolen because of the PREA complaint.  See Olivares v. United States, 447 F. App'x 347, 351–52 (3d Cir. 2011) (holding inmate failed to exhaust claim

about lack of a knee-brace because his grievance "isolated the concerns expressed to those involving surgery and possible relocation").  See also ECF No. 137-8 at 120 (requiring remedy forms to "include a summary of the requested information or presented issues, concerns or complaints").  Therefore, Plaintiff did not exhaust his claims against Defendant Jackson.

> d.   Defendant Moratelli

Plaintiff alleged in the FAC that "Defendant Moratelli wrote on Mr. Hines' cell door that Hines weas a rat, as direct retaliation and in refence to Hines' PREA complaint; 1/30/2019." FAC ¶ 24.  He also alleged that "[o]n or about Feb. 9, 2019, Defendant Moratelli retrieved the keys to Mr. Hines' cell from Officer L. Smith and opened Hines' door and said that L. Smith and Officer Goffred told Moratelli that Hines filed a PREA . . . .'"  Id. ¶ 25.

Plaintiff did not file a grievance about these alleged incidents.  Therefore, he did not exhaust this claim.

> e.   Defendants Goffred and Smith

Plaintiff alleges Defendant Smith gave Defendant Moratelli the key to Plaintiff's cell and told Defendant Moratelli about the PREA complaint.  Id.  He also alleges that Defendant Smith put him into a chokehold "and whispered that he would break Hines' neck" in April 2019.  Id. ¶ 26.  Plaintiff asserts Defendant Goffred told Defendant Moratelli about the PREA

complaint and told Plaintiff "'n****r you're fucking with our jobs now, we're going to hang your ass.'"  Id. ¶ 25.

Plaintiff filed two grievances in April 2019, but neither concerned Defendants Goffred or Smith.  One requested a dental appointment.  ECF No. 137-8 at 101.  The other grievance was about mail.  Id. at 100.  Therefore, Plaintiff did not exhaust his claim against Defendants Goffred and Smith.

> f.   Defendants McNear and Horsey

Plaintiff's final retaliation claim alleges that "[o]n or about September 28, 2019, Defendant McNear said 'this is what we do to rats' and rammed Mr. Hines' wheelchair into the wall; Defendant Sgt Horsey watched and laughed and said he didn't see anything."  FAC ¶ 27.

Plaintiff did not file a grievance about this alleged incident.  Therefore, he did not exhaust this claim.

The Court finds that Plaintiff failed to exhaust his administrative remedies for all his claims, except for his claim that Defendant Marin permitted other inmates to take Plaintiff's personal property on July 7, 2019.  Plaintiff now bears the burden of showing that the administrative remedy program was unavailable to him.  Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018).

B.   Availability of Remedy

Plaintiff argues that administrative remedies were unavailable because Defendants prevented him from using the system through intimidation.  "Despite filing complaints, [Plaintiff] continued to be harassed and threatened and his medical needs denied.  Even though Plaintiff was filing proper complaints, relief was a dead end."  ECF No. 140 at 13.  "With all deference given to Plaintiff's version of event[s] for Summary Judgment purposes, certainly it is a reasonable interpretation of defendant's conduct to be thwarting, intimidating and depriving Plaintiff of any real relief."  Id. at 14 (citing Ross v. Blake, 578 U.S. 632, 644 (2016)).

"'[I]ntimidation' by prison officials can 'thwart inmates from taking advantage of a grievance process' and thus render that process 'unavalidable.'"  Rinaldi, 904 F.3d at 268 (quoting Ross, 578 U.S. at 644).  "To defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate."  Id. at 269.  The Court finds that Plaintiff has not established that he was deterred from filing grievances.

Plaintiff did not testify during his deposition that prison officials kept him from using the grievance system.  See Pla. Dep. passim.  Nor did he submit a certification to that effect

after the Court's Paladino notice.  ECF No. 144.  Additionally, Plaintiff filed other grievances alleging retaliation, suggesting that he was not deterred.  See, e.g., ECF No. 137-8 at 79-80, 92, and 94.  See also Rinaldi, 904 F.3d at 269 ("Evidence that an inmate continued to file substantially similar claims through the same grievance process, for example, may be sufficiently compelling to defeat an inmate's assertion of subjective deterrence.").  Plaintiff did exhaust other grievances through the system, which supports the Court's conclusion that he had access to the remedy system.  See, e.g., ECF No. 137-8 at 96-101.

After considering the record before the Court, the Court finds that Plaintiff failed to exhaust available remedies for his claims, excluding the claim that Defendant Marin permitted other inmates to take his personal property, before filing this lawsuit.  Therefore, the Court will award summary judgment on the unexhausted claims.

C.   Merits

The Court has concluded that Plaintiff exhausted his administrative remedies for the claim that Defendant Marin permitted other inmates to take his personal property in retaliation for filing the PREA complaint against Defendant Waters.  FAC ¶ 22.  The Court now assesses whether Defendant Marin is entitled to judgment as a matter of law.

To prove his retaliation claim, Plaintiff must show that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

Defendant Marin testified under oath at a deposition. Marin Deposition, ECF No. 137-8 at 3 ("Marin Dep.").  He denied the accusation that he let other inmates steal Plaintiff's property.  Id. 12:15, 13:3-6.  He testified that he worked as a property officer and became familiar with Plaintiff's property because he had to pack up Plaintiff's property every time Plaintiff went to administrative segregation.  Id. 14:1-14.  He recalled that Plaintiff's property was mostly legal paperwork aside from his state-issued property.  Id. 16:6-15.  He also denied knowing that Plaintiff filed a PREA complaint against Defendant Waters.  Id. 24:20-22.  He stated that he could not remember if anyone had ever filed a grievance against him.  Id. 26:4-11.

Plaintiff has not produced any admissible evidence to contradict Defendant Marin's sworn statements.  At his deposition, Plaintiff testified that Defendant Jackson was

responsible for the theft of his property because Defendant
Jackson was the property officer at the time.  See Pla. Dep.
79:14-15 ("Q: Do you know who stole your property? A: He's the
property officer.  He the one who took it."); id. 79:25
(testifying that Defendant Jackson was "the only one that went
in there"); 80:16-19 ("Q: So your allegation is that [Defendant
Jackson] stole your property as a means of retaliation.  A:  He
— he told me he was going to let them steal it."); 82:11-13 ("[]
Terrance Jackson have control of my property and allowed the
inmates to take the property to him.  Thus, my property is
gone.").  Plaintiff did not mention Defendant Marin's alleged
involvement beyond acknowledging the accusation from the FAC.
Id. 78:17 to 79:4.

"[S]ummary judgment is essentially 'put up or shut up' time
for the non-moving party: the non-moving party must rebut the
motion with facts in the record and cannot rest solely on
assertions made in the pleadings, legal memoranda, or oral
argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195,
201 (3d Cir. 2006).  See also Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 257 (1986) ("[T]he plaintiff must present
affirmative evidence in order to defeat a properly supported
motion for summary judgment.").  Plaintiff has not provided
evidence that would permit a factfinder to conclude that

26

Defendant Marin retaliated against him.  Therefore, the Court will award summary judgment to Defendant Marin.[4]

## IV.  CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment.  Judgment will be entered in Defendants' favor.

An appropriate Order follows.


Dated: February 26, 2024          s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

[4] As the Court has awarded summary judgment to Defendants on all claims, it is unnecessary to address their qualified immunity arguments.